UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COMERICA BANK, a Texas banking association,
successor in interest by merger to Comerica Bank, a
Michigan banking corporation,

       Plaintiff,

v.

CATALINA PRECISION PRODUCTS, INC. a
Delaware corporation, and UFE INCORPORATED, a
Minnesota corporation,

       Defendants.
_____/

Case No.
Hon.

BODMAN LLP
By:    Dennis J. Levasseur (P39778)
         Melissa M. Benton (P73018)
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, Michigan 48226
(313) 259-7777
dlevasseur@bodmanllp.com
mbenton@bodmanllp.com
Attorneys for Plaintiff Comerica Bank
_____/

**VERIFIED COMPLAINT**

August 4, 2010

Detroit_1024589_3

Plaintiff Comerica Bank ("Comerica"), by its attorneys, Bodman LLP, for its verified complaint for, among other relief, appointment of a receiver, states as follows:

## PARTIES

1. Comerica is a Texas banking association, successor in interest by merger to Comerica Bank, a Michigan banking corporation, with its principal place of business located in Dallas, Texas.

2. Defendant Catalina Precision Products, Inc. ("Catalina") is a Delaware corporation with its principal place of business located at 105 Prospect Way, Osceola, Wisconsin 54020.

3. Defendant UFE Incorporated ("UFE") is a Minnesota corporation with its principal place of business located at 1850 South Greeley Street, Stillwater, Minnesota.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action under 28 U.S.C. §1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and because the parties are citizens of different states. In particular, Comerica is a Texas corporation and defendants are Minnesota and Delaware corporations.

5. Venue is proper in this Court under 28 U.S.C. §1391(a) because: (a) a substantial part of the events or omissions giving rise to the claims described below occurred in this district; and (b) defendants are subject to personal jurisdiction in this Court because, among other things, they do business in the Eastern District of Michigan.

## GENERAL ALLEGATIONS

A. **The Master Revolving Note and the Advance Formula Agreement.**

6. On or about March 31, 2009, defendants executed a certain Master Revolving Note ("March 2009 Master Revolving Note") in Comerica's favor in the amount of

$7,000,000.00. A copy of the March 2009 Master Revolving Note is attached to this verified complaint as Exhibit A.

7.   Under the March 2009 Master Revolving Note, defendants agreed, among other things, to pay all outstanding amounts due under the March 2009 Master Revolving Note, together with interest thereon as described in that Note on Comerica's demand. Id., p.1.

8.   Under a certain Advance Formula Agreement, dated as of December 8, 2008,[1] defendants agreed that the March 2009 Master Revolving Note (and any other formula notes extended by Comerica to defendants in the future) was subject to the Advance Formula Agreement and that defendants' indebtedness to Comerica under such notes would "never exceed the sum of seventy five percent (75%) of the [defendants] Eligible Accounts, as hereinafter defined." A copy of the Advance Formula Agreement is attached to this verified complaint as Exhibit B.

9.   The Advance Formula Agreement defined an "Eligible Account" as, among other things, an account that "is not owing more than ninety (90) days after the date of the original invoice or other writing evidencing such Account; * * *." Id., Section 4, p. 1.

10.   The Advance Formula Agreement required defendants to, among other things, deliver to Comerica, "within fifteen (15) days after and as of the end of each month (and at such other times as [Comerica] may request), deliver to [Comerica] copies of the accounts and a schedule identifying each Eligible Account (not previously so identified)." Id., Section 6, p. 2.

11.   The Advance Formula Agreement also permitted Comerica to "make such inspections and audits, and to obtain such confirmations or other information, with respect to any

---

[1] The Advance Formula Agreement was entered into in connection with a predecessor to the March 2009 Master Revolving Note. The Advance Formula Agreement covered existing and future formula loans between Comerica and defendants.

- 2 -

of the Collateral or any Account Debtor as [Comerica] is entitled to make or obtain under the Security Agreement * * *."2  Id., Section 7, p. 3.

12. Any failure to comply with the Advance Formula Agreement is considered a default under the Master Revolving Notes described in this verified complaint. Id., Section 8, p. 2.

13. The March 2009 Master Revolving Note provides that if defendants fail to comply with the terms or provisions of any agreement between defendants and Comerica, that Comerica may, without any prior notice, declare a default. Id., p. 3.

14. The March 2009 Master Revolving Note provides that, in the event of a default, Comerica was entitled to, among other things, declare any and all of the indebtedness under the March 2009 Master Revolving Note (and any other notes executed by defendants) to be due and payable, charge interest at the default rate, "and exercise any one or more of the rights and remedies granted to [Comerica] by any agreement with [defendants] (or any of them) or given to it under applicable law." See, Exhibit A, p. 3.

15. The March 2009 Master Revolving Note was replaced with a virtually identical Master Revolving Note, in the amount of $5,750,000.00, on or about September 29, 2009 ("September 2009 Master Revolving Note").

**B.    Defendants' Defaults.**

16. On or about February 12, 2010, Comerica declared the September 2009 Master Revolving Note (as well as the other notes described herein) in default because, based on "certain field audits conducted by [Comerica], the outstanding balance of the September 2009

---

2 The Security Agreements discussed below give Comerica broad rights to, among other things, inspect defendants' books and records.

Master Revolving Note exceeds the Advance Formula and [defendants] have not paid [Comerica] sums sufficient to reduce the amounts of the excess." A copy of the February 12, 2010 demand letter is attached to this verified complaint as Exhibit C.

17. On or about March 4, 2010, defendants and Comerica entered into a certain Forbearance Agreement, a copy of which is attached to this verified complaint as Exhibit D.

18. Defendants and Comerica agreed in the Forbearance Agreement, among other things, that Comerica would forbear from certain enforcement activities until June 1, 2010 (subject to earlier termination), and that defendants were in default of the March 2009 Master Revolving Note (as well as the Single Disbursement Demand Note and Term Note, described below). Id., p.2.

19. Defendants also agreed in the Forbearance Agreement that

"4. 100% of Borrowers' cash inflows will be applied to the Master Revolving Note. Subject to maintaining an advisory "Advance Formula" (defined below) equal to or greater than the balance owing on the Master Revolving Note, and provided there are no defaults under the terms of this Agreement, and no further defaults under the Loan Documents, [Comerica] may, in its sole discretion, continue to advance to Borrowers under the Master Revolving Note, in accordance with the Loan Documents, through June 1, 2010. The Advance Formula is as provided in that certain Advance Formula Agreement between UFE and [Comerica] dated December 8, 2008 ("Advance Formula Agreement"), as amended by this Agreement. In the event the balance on the Master Revolving Note exceeds the Advance Formula at any time, no advances will be allowed until such time as Borrowers pay [Comerica] an amount sufficient to reduce the balance on the Master Revolving Note by the amount of the excess. Each borrowing request or Accounts Receivable collection must be accompanied by an accounts receivable report, in form satisfactory to [Comerica], with a minimum of one report per week." Id., p.2.

20. Defendants also agreed in the Forbearance Agreement that concurrently with the execution of the Forbearance Agreement that they (and certain third parties or the "Support Parties") would obtain from SPE Investments, LLC ("SPE") written consent to direct payments to Comerica, that were otherwise owing by defendant UFE to SPE. Id., pp. 3-4.

21. Defendants also agreed in the Forbearance Agreement as follows:

> "15. Borrowers will maintain all commercial accounts with [Comerica]. On or before March 15, 2010, Borrowers shall provide [Comerica] written evidence acceptable to [Comerica] that Borrowers have closed that certain account #698570355 in Borrowers' name at Chase Bank.
>
> "16. Concurrently with the execution of this Agreement, Borrowers shall engage a financial consultant acceptable to [Comerica] with a scope of engagement acceptable to [Comerica]. It shall be a default under this Agreement if Borrowers fail, at any point after the execution of this Agreement, to engage a financial consultant acceptable to [Comerica] with a scope of engagement acceptable to [Comerica]." Id., pp. 3-4.

22. In connection with the Forbearance Agreement, defendants executed a Master Revolving Note dated as of March 4, 2010 (the "March 2010 Master Revolving Note") in the amount of $6,700,000 that provided, among other things, that it was due on Comerica's demand. A copy of the March 2010 Master Revolving Note is attached to this verified complaint as Exhibit E.

23. On or about April 22, 2010, Comerica notified defendants that they were in default of the March 2010 Forbearance Agreement (and, therefore, the March 2010 Master Revolving Note) for at least the following reasons:

> "1). UFE failed to pay directly to [Comerica], for the account of SPE Investments, LLC ("SPE"), all amounts owing to SPE for equipment UFE leases from SPE;
>
> "2). Borrowers failed to provide written evidence acceptable to

- 5 -

[Comerica] the Borrowers closed that certain account #698570355 in Borrowers' name at Chase Bank * * *;

"3). Borrowers failed to maintain the engagement of a financial consultant acceptable to [Comerica] * * *; and

4). Based on certain field audits recently conducted by [Comerica], the outstanding balance on the Master Revolving Note exceeds the Advance Formula and Borrowers have not paid [Comerica] sums sufficient to reduce the amount of the excess (In addition, UFE is improperly including accounts in its borrowing base that are not Eligible Accounts)."

24. A copy of the April 22, 2010 demand letter is attached to this verified complaint as Exhibit F.

25. Comerica reinstated its demand that defendants pay all of the amounts due to Comerica under the March 2010 Master Revolving Note, the Single Disbursement Note, and the Term Note.

26. On or about July 8, 2010, Comerica and defendants entered into a first amendment to the Forbearance Agreement ("First Amendment"), a copy of which is attached to this verified complaint as Exhibit G.

27. In the First Amendment defendants agreed to, among other things, that:

"12. On or before July 16, 2010, Borrowers shall provide [Comerica] with a plan, in form and content acceptable to [Comerica], detailing how UFE proposes to collect its account receivable owing more than ninety (90) days after the date of the original invoice or other writing evidencing such account receivable ("Over 90 Day Accounts"). * * *"

* * *

"18. On or before July 16, 2010, Borrowers shall cause any necessary third party to execute and deliver to [Comerica] a Pledge and Security Agreement in the form attached, under which such third parties shall deliver and pledge to [Comerica], to secure the Liabilities, $500,000. * * *." Id., pp. 3-5.

28.     Defendants also agreed in the First Amendment to execute and deliver to Comerica the Amended and Restated Advance Formula Agreement attached as Exhibit H, which amended and restated the Advance Formula Agreement as follows:

> "'ADVANCE FORMULA. Debtor warrants and agrees that Debtor's indebtedness to Bank for the Formula Loans shall never exceed the sum of:
>
> (a)   seventy five percent (75%) of Debtor's Eligible Accounts, as hereinafter defined; plus
>
> (b)   the lesser of (i) the Advance Percentage of Debtor's Eligible Foreign Accounts, as hereinafter defined or (ii) One Million Dollars ($1,000,000); plus
>
> (c)   the lesser of fifty percent (50%) of Debtor's Eligible Inventory, as hereinafter defined, or (ii) Two Million Dollars ($2,000,000), provided, however, the aggregate amount of advances based on Debtor's Eligible Inventory consisting of work-in-process shall at no time exceed $1,000,000; plus
>
> (d)   $950,000; plus
>
> (e)   $995,000 ("Overformula Amount"); less
>
> (f)   the aggregate amount owed by Debtor to tooling vendors.
>
> 'Advance Percentage' shall mean seventy percent (70%) for Account Debtors that maintain their chief executive offices in, or are organized under the laws of Indonesia. For all other Account Debtors it shall mean eighty percent (80%).
>
> The Overformula Amount shall shall reduce to $0 on December 31, 2010 (or sooner as provided in that certain First Amendment to Forbearance Agreement among [Comerica], [UFE] and [Catalina], among others, dated July 8, 2010."

29.     Defendants are in default of the March 2010 Master Revolving Note because, contrary to the requirements of the First Amendment, they have: (a) failed to cause any necessary third party to execute and deliver to Comerica a Pledge and Security Agreement under which such third parties were to deliver and pledge to Comerica $500,000 to secure the liabilities on or

- 7 -

before July 16, 2010; and (b) failed to provide Comerica with a Plan, detailing how UFE proposes to collect its Over 90 Days Accounts.

30. As of August 3, 2010, the outstanding principal balance owed by defendants under the March 2010 Master Revolving Note was $6,590,518.68, with accrued interest of $47,230.58. Interest, including default interest, continues to accrue on the March 2010 Master Revolving Note.

### C. The Single Disbursement Demand Note.

31. On or about September 29, 2009, defendants executed a certain Single Disbursement Demand Note in the amount of $500,000. A copy of the Single Disbursement Demand Note is attached to this verified complaint as Exhibit I.

32. Under the Single Disbursement Demand Note, defendants agreed to repay the Single Disbursement Demand Note on demand. Id., p.1.

33. The Single Disbursement Demand Note provides, among other things, that if defendants are in default of any other agreement with Comerica that Comerica may, without prior notice to defendants, declare a default of the Single Disbursement Demand Note. Id., p. 3.

34. As of August 3, 2010, the outstanding principal owed by defendants under the Single Disbursement Demand Note was $500,000.00 with accrued interest of $3,667.67. Interest, including default interest, continues to accrue on the Single Disbursement Demand Note.

35. Defendants are in default of the Single Disbursement Demand Note because they are in default of the March 2010 Master Revolving Note.

- 8 -

### D. The Term Note.

36. On or about September 29, 2009, defendants executed a certain Term Note in the amount of $1,202,666.72. A copy of the Term Note is attached to this verified complaint as Exhibit J.

37. Under the Term Note, defendants agreed to repay the Term Note on the April 1, 2013 maturity date. Id., p.1.

38. The Term Note provides, among other things, that if defendants are in default of any other agreement with Comerica that Comerica may, without prior notice to defendants, declare a default of the Term Note. Id., p. 3.

39. As of August 3, 2010, the outstanding principal owed by defendants under the Term Note was $984,000.08, with accrued interest of $7,209.92. Interest, including default interest, continues to accrue on the Term Note.

40. Defendants are in default of the Term Note because they are in default of the March 2010 Master Revolving Note.

### E. The Security Agreements.

41. On or about April 25, 2008, defendants UFE and Catalina each executed Security Agreements that, among other things, secured all existing and future indebtedness of defendants UFE and Catalina to Comerica. The Security Agreements are attached to this verified complaint as Exhibits K and L.

42. Under the Security Agreement executed by defendant UFE, defendant UFE agreed that Comerica had a security interest in all present and future assets of defendant UFE.

43. Section 1 of the Security Agreement executed by defendant UFE defined Collateral to include, *inter alia*, all of UFE's "Accounts Receivable" (which is defined to

- 9 -

include, *inter alia*, all accounts, general intangibles, chattel paper, and rights to payment for money or funds advanced or sold) as well as all of defendant UFE's inventory, equipment and fixtures, software, and investment property. See, Exhibit K, p. 1. At the time that it executed the Security Agreement, defendant UFE represented that it had collateral located in Minnesota, Texas, and Wisconsin. Id.

44. The Security Agreement executed by defendant Catalina defined Collateral to include: (a) 1,300,000 shares of defendant UFE; and (b) all general intangibles acquired or used in connection therewith, all goods, instruments, documents, policies and certificates of insurance, deposits, money, investment property or the property in Comerica's possession or control and to become in Comerica's possession and control. See, Exhibit L, p. 1.

45. The Security Agreements each provide that the following, among others, are Events of Default: (a) any failure to pay any indebtedness (by acceleration or otherwise) to Comerica when due; and (b) the occurrence of an Event of Default as defined in any loan or agreement with Comerica. See, Exhibit K, pp. 2-3, and Exhibit L, p. 2.

46. The Security Agreements each provide that upon the occurrence of any Event of Default, Comerica may (without prior notice to defendants) "declare any or all of the Indebtedness to be immediately due and payable" and, among other things:

> "[p]ersonally or by agents, attorneys, or **appointment of a receiver,** enter any premises where Collateral may there be located, and take possession of all or any of it * * *; and without being responsible for loss or damage to such Collateral, **hold, operate, sell, lease, or dispose of all or any Collateral at one or more public or private sales, leasings or other dispositions * * *.**" See, Exhibit K, p. 3, and Exhibit L, p. 2; emphasis added.

### F.     Defendants Have Ceased Normal Business Operations.

47.     Comerica has been informed by defendants' president and CEO Gregory Willis ("Willis") and CFO Catherine Zickfeld ("Zickfeld") that they had resigned their positions as officers of defendants and that all members of the board of directors have resigned.

48.     Comerica has been informed that Willis and Zickfeld have continued to be in control of defendants, albeit as "employees."

49.     On or about Friday, July 23, 2010, defendants informed Comerica that they intend to cease defendants' business operations and liquidate defendants' assets.

50.     Comerica has attempted unsuccessfully to work with defendants on the appointment of a chief restructuring officer to conduct the orderly wind down of defendants' business and to liquidate defendants' assets.

### COUNT I - FOR CLAIM AND DELIVERY

51.     Comerica incorporates by reference the allegations in paragraphs 1 through 50 of this verified complaint.

52.     As demonstrated and alleged above, defendants are in default of their obligations to Comerica under the agreements described above.

53.     Under the Security Agreements, because of defendants' default of the notes described above, Comerica is entitled to immediate possession of all property in defendants' custody, possession and/or that is covered by the Security Agreements.

54.     Comerica properly perfected its interests by filing UCC financing statements with the proper offices.

55.     Under Article 9 of the Uniform Commercial Code, Comerica is entitled to immediate possession of the Collateral covered by the Security Agreements. See, M.C.L.A.

§600.2920.³

56. Upon information and belief and for the purposes of Rule 64, Fed.R.Civ.P., and MCR 3.105(C)(2), Comerica estimates the value of the Collateral to be well in excess of $25,500.00.

## COUNT II – FOR APPOINTMENT OF RECEIVER

57. Comerica incorporates by reference the allegations in paragraphs 1 through 56 of this verified complaint.

58. The Security Agreements, described above, contemplate, among other remedies available to Comerica, the appointment of a receiver to take possession of all or any portion of the Collateral and to exercise such rights and powers as the court appointing such receiver may confer upon such receiver. See, e.g., Exhibits K and L, pp. 5-6 ("upon the occurrence of any Event of Default, [Comerica] may * * * [p]ersonally or by agents, attorneys, or appointment of a receiver, enter upon any premises where Collateral may then be located, and take possession of all or any of it * * *").

59. As a result, this Court may appoint a receiver for Comerica and its collateral (as described in the Security Agreements) as a matter of contract law, without looking to the legal grounds for appointing a receiver when defendants have not consented.

60. Even disregarding the fact that defendants have consented to the appointment of a receiver, good cause exists in this case for such appointment.

61. Comerica is of the good faith belief that defendants are unable or unwilling to safeguard and liquidate the Collateral as required by the loan documents described above, and

---

³ Each of the documents described above, including the Security Agreements, provide that they are to be governed and construed in accordance with Michigan law.

therefore, the value of Comerica's Collateral is severely jeopardized and in danger of further deterioration.

62. Moreover, as demonstrated above, it appears that defendants are unwilling to and/or incapable of fulfilling their obligations to Comerica inasmuch as they, among other things, have failed to pay their financial obligations as they came due to Comerica and have failed to fulfill their obligations to Comerica under the Advance Formula Agreement, as amended, the Notes, First Amendment, and the Security Agreements.

63. Moreover, as also demonstrated above, defendants' officers have resigned and their respective boards of directors have dissolved, thereby leaving defendants without the appropriate leadership to conduct business and/or an orderly wind down of operations.

64. Defendants' financial condition and mode of operation makes it highly unlikely that they can operate the Collateral, all of which requires immediate relief to protect Comerica's interests.

65. Comerica is entitled to have the Receiver appointed as a matter of equity to protect it from irreparable injury by taking actions necessary to operate and handle the Collateral in a financially-responsible manner and to protect the viability of Comerica's interests in the Collateral.

66. By reason of the foregoing, Comerica is suffering and will continue to suffer immediate and irreparable injury, including loss and damage under the above-described notes and Security Agreements, unless a receiver is appointed in this case.

67. The financial condition of defendants and their inability to preserve and protect the Collateral in a manner consistent with Comerica's rights and interests jeopardizes Comerica's secured position. The appointment of a receiver is necessary to preserve, protect, and maintain

the value of Comerica's interests in the Collateral.

68. The Collateral and the proceeds thereof constitute a fund in litigation, and the rights of Comerica cannot be fully protected without the appointment of a receiver as requested in this verified complaint. There is a danger of harm to the Collateral, thereby authorizing the intervention of equity to appoint a receiver to take possession and control of the Collateral. Moreover, the Collateral securing Comerica's claims constitutes an asset charged with the payment of debts where there is manifest danger of loss, destruction or diminution in value thereof.

69. Comerica is entitled to the immediate appointment of a receiver having the powers, privileges, immunities and duties as are necessary to perform his or her duties.

## COUNT III – FOR INJUNCTIVE RELIEF

70. Comerica incorporates by reference the allegations in paragraphs 1 through 69 of the verified complaint.

71. Comerica has no adequate remedy at law and is in danger of suffering irreparable harm and injury as a result of imminent damage to or loss of the Collateral.

72. Comerica is likely to succeed on the merits in this action.

73. In connection with the appointment of a receiver as prayed for herein and otherwise, it is necessary and appropriate for this Court to enter an order imposing an injunction in aid of the receiver fulfilling his duties and obligations as set forth in the proposed order Comerica has submitted in connection with filing this complaint (the "Proposed Order"). Such relief is necessary to implement the Proposed Order and the protection and preservation of the Collateral.

Detroit_1024589_3

### COUNT IV - FOR BREACH OF THE MASTER REVOLVING NOTE

74. Comerica incorporates by reference the allegations in paragraphs 1 through 73 of this verified complaint.

75. As demonstrated above, defendants are in default of the March 2010 Master Revolving Note and, therefore, defendants are liable to Comerica for all amounts described above including interest which continues to accrue

### COUNT V - FOR BREACH OF THE SINGLE DISBURSEMENT DEMAND NOTE

76. Comerica incorporates by reference the allegations in paragraphs 1 through 75 of this verified complaint.

77. As demonstrated above, defendants are in default of the Single Disbursement Demand Note and, therefore, defendants are liable to Comerica for all amounts described above including default interest which continues to accrue.

### COUNT VI - FOR BREACH OF THE TERM NOTE

78. Comerica incorporates by reference the allegations in paragraphs 1 through 77 of this verified complaint.

79. As demonstrated above, defendants are in default of the Term Note and, therefore, defendants are liable to Comerica for all amounts described above including, default interest which continues to accrue.

WHEREFORE, Comerica requests that process issue and that Comerica have judgment as follows:

    (A)    Under Count I of this verified complaint:

        1.    An order directing defendants to show cause why Comerica should not be entitled to immediate possession of the Collateral;

  2. Finding that Comerica is entitled to immediate possession of the Collateral and ordering and directing defendants to deliver such Collateral to Comerica;

  3. A preliminary injunction against defendants and their agents and employees (as well as any other persons with knowledge of this Court's order) barring them from transferring, expending, distributing, concealing, destroying, damaging or otherwise diminishing the Collateral that is subject and that will become subject to the Security Agreements or any part thereof or any personal property on which Comerica has a lien, or any proceeds of the same, including rents, profits, and revenues, until a receiver is appointed and during the pendency of this action; and

  4. An order requiring all persons who have possession or control of the Collateral that is subject to the Security Agreements, to yield and deliver possession of same to Comerica.

(B) Under Count II of this verified complaint, the appointment of Conway, MacKenzie, Inc. as receiver over the Collateral and all other assets, income, revenue, expenditures, disbursements, books and records, and all real and personal property of defendants, wherever located.

(C) Under Count III of this verified complaint, a temporary, preliminary, and permanent injunction to enjoin (in aid of the receiver) against the defendants, their agents, attorneys, representatives, and assigns and any persons acting now or hereafter on their behalf as well as others with

- 16 -

notice of the order from removing, transferring, hiding, harming, converting, and/or dissipating any Collateral or interfering with the rights of Comerica and/or interfering with the receiver.

(D) Under Counts IV, V, and VI of this verified complaint, that defendants are liable to Comerica for the entire amount of the indebtedness plus any interest, including default interest, which continues to accrue.

(E) Award Comerica its costs, under the loan documents described above, including attorney fees, incurred in connection with and/or as a result of defendants' defaults.

(F) Award Comerica such other relief as is just and equitable.

                              Respectfully submitted,

                              BODMAN LLP

                              By: /s/ Dennis J. Levasseur
                                  Dennis J. Levasseur (P39778)
                                  Melissa M. Benton (P73018)
                              6th Floor at Ford Field
                              1901 St. Antoine Street
                              Detroit, Michigan 48226
                              (313) 259-7777
                              Attorneys for Plaintiff Comerica Bank

August 4, 2010
Detroit, Michigan

## VERIFICATION

I declare under penalties of perjury that the factual statements set forth in the foregoing complaint are true and correct to the best of my information, knowledge, and belief.

**COMERICA BANK**

By: _____
/ GARY P. MACK

Its: _____VICE PRESIDENT_____