UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COMERICA BANK, a Texas banking association,
successor in interest by merger to Comerica Bank, a
Michigan banking corporation,

       Plaintiff,

v.

CATALINA PRECISION PRODUCTS, INC. a
Delaware corporation, and UFE INCORPORATED, a
Minnesota corporation,

       Defendants.

_____/

Case No. 2:10-cv-13089

Hon. George Caram Steeh
Magistrate Judge Mark A. Randon

## <u>ORDER TEMPORARILY APPOINTING RECEIVER</u>

This matter having come before this Court on plaintiff's motion for appointment of a

receiver and preliminary injunction, the Court having held a conference, and having concluded

that such appointment is just under the circumstances pending a hearing on the matter,

IT IS ORDERED THAT:

1.      This Order shall go into effect immediately, and shall remain in effect pending a

telephonic hearing to be held on <u>August 11, 2010 at 9:00 a.m.</u>

2.      Effective and commencing on the date of entry of this Order, Conway,

MacKenzie, Inc. (hereinafter "Receiver") is appointed as the Receiver of real tangible and

intangible property owned by defendants Catalina Precision Products, Inc., and UFE

Incorporated on which plaintiff holds a security interest. The property described immediately

above is referred in this Order as the "Pledged Assets" and includes all of the following:

(b)      Certain collateral described in plaintiff's verified complaint and the

security agreements attached to it;

(c)     All fixtures of every kind or nature located in or upon or attached to, or used or intended to be used in connection with the operation of the Pledged Assets and any buildings, structures or improvements thereon;

(d)     All of the collateral and assets of defendants, as described in the security agreements attached to plaintiff's verified complaint including, but not limited to, all machinery, apparatus and equipment, materials, supplies, articles of personal property used in connection with or with the operation of the Pledged Assets;

(e)     All the rent, royalties, issues, revenues, income, profits and other benefits of the Pledged Assets and the facilities thereon from operation of any of the Pledged Assets or under present or future contracts, occupancy agreements, agreements for reimbursement, or otherwise, together with all accounts due or to become due as income in connection with the operations of the Pledged Assets (collectively, "the Revenue");

(f)     To the full extent transferable under applicable law, all permits, licenses and other contracts pertaining to the Pledged Assets and the operations of the Pledged Assets;

(g)     All books, records, accounts or documents which in any way relate to the Pledged Assets, the Revenue, or the operations of the Pledged Assets; and

(h)     All other property, estate, right, title and interest as described in the security agreements, and the other loan documents attached to and referred to in plaintiff's motion.

Detroit_1024719_2

2.      Defendants and their past and present officers, directors, shareholders, employees, trustees, agents, representatives and/or any entity controlled by defendants are directed to cooperate with the Receiver in the transition of the management of the Pledged Assets and shall make immediately available to the Receiver all of their records concerning the Pledged Assets so that the Receiver may adequately account for any revenue collected or owing through the date the Receiver is appointed, including, but not limited to, all:

(a)      Leases including communication/correspondence files;

(b)      A current aged accounts receivable/delinquency report;

(c)      Documents identifying and summarizing all pending litigation;

(d)      All operating licenses;

(e)      All existing service contracts;

(f)      Copies of all on site employee payroll records and employee files and applications to include number of employees on health or dental program by coverage (single, single plus, or family coverage), gender and age of each employee;

(g)      All documents, books, records and computer files and records concerning the Revenue, profits, finances, issues, and operation and management of the Pledged Assets; and

(h)      Such other records pertaining to the management of the Pledged Assets as may be reasonably requested by the Receiver.

3.      The release of employee payroll records and files is authorized by this Order.

4.      Immediately upon entry of this Order, the Receiver has the authority to operate the Pledged Assets.

Detroit_1024719_2

5.      Defendants and any third-parties receiving notice of this Order shall also surrender to the Receiver all monies that they currently or later possess (and/or that is or becomes subject to their control) from Revenue collected from the operation of the Pledged Assets.

6.      Immediately upon entry of this Order and continuing until expiration or termination of the receivership, the Receiver is authorized to take any actions the Receiver deems reasonable and appropriate to take possession of, to exercise full control over, and to prevent waste and to preserve, manage, maintain, secure and safeguard the Pledged Assets, including, but not limited to, all cash on hand, bank accounts, credit card receipts, bank deposits, other cash collateral as well as all Pledged Assets, and take such other actions as may be necessary and appropriate to take possession, to exercise full control, to prevent waste and to preserve, secure and safeguard the receivership property, including taking possession of and copying: all books, records, notes, memoranda, loan documents, deeds, bills of sale, canceled checks, check ledgers, calendar notes, diary notes, notes, records, ledgers, electronically stored data, tape recordings, computer discs, or any other financial documents or financial information in whatever form belonging to defendants that relate in any way to the defendants' business practices or finances or the Pledged Assets.   Without limiting the generality of the foregoing, the Receiver is authorized to:

(a)      Take all action determined by the Receiver to be necessary or appropriate to safeguard and preserve all tangible and intangible assets of the Pledged Assets and all licenses used in connection with the operation of the Pledged Assets;

(b)      Collect all Income from the Pledged Assets;

- 4 -

(c)    Allow the plaintiff and its counsel access to the Pledged Assets at reasonable times to inspect the Pledged Assets and all books and records thereof;

(d)    Collect any unpaid or delinquent Revenue, issues and profits regardless of when accrued;

(e)    Enforce termination or approve any contracts and/or agreements regarding the Pledged Assets, subject to plaintiff's approval;

(f)    Retain, hire, or discharge on-site employees;

(g)    Borrow from plaintiff such funds as may be required to pay the costs and expenses of the administration of the receivership, including but not limited to:

    i)    the operation, maintenance, preservation, protection, management, marketing, and sale of the Pledged Assets;

    ii)    the collection or preservation of the Pledged Assets and/or Revenue;

    iii)    city, county, state and federal taxes and assessments pertaining to the Pledged Assets on a current basis;

    iv)    maintenance of adequate insurance;

    v)    the fees of the Receiver; and

    vi)    to issue Receiver's certificates as evidence thereof, which certificates shall constitute a lien upon the Pledged Assets and Revenue, which lien shall be prior to all other liens, titles or claims with respect to the Pledged Assets except the security interests held by plaintiff;

(m)    Establish pay rates of on-site employees and to pay all withholding taxes

Detroit_1024719_2

regarding such employees that accrued after the entry of this Order; and

(n)     Manage, maintain and operate the Pledged Assets;

(o)     pay from funds received as Receiver of all of the following (collectively "Operating Expenses"): (i) all ordinary and necessary operating expenses arising from the operation by the Receiver of the Pledged Assets for the period after entry of this Order until expiration or termination of the receivership; (ii) all real estate and personal property taxes and assessments now due or delinquent together with interest and penalties thereon or real estate and personal property taxes to become due prior to the sale of the Pledged Assets or the expiration of the equity of redemption; (iii) all premiums of hazard, liability and other insurance policies upon the Pledged Assets for the term of the receivership; and (iv) reasonable reserves to fund operating expenses during the term of the receivership.

7.     The Receiver shall receive reasonable compensation for its services, payable from the funds collected from operation of the Pledged Assets. The Receiver shall pay to plaintiff, for application to the indebtedness owed by defendants to plaintiff, on a monthly basis the net revenues after payment of Operating Expenses.

8.     Defendants and third-parties receiving notice of this Order shall reasonably cooperate with the Receiver in obtaining all necessary insurance relating to the operation and management of the Pledged Assets, including but not limited to fire, extended coverage, property damage, general and professional liability, and workers' compensation. The Receiver and plaintiff shall be named as an additional insureds on all such liability policies and as mortgagee

- 6 -

or as their interests otherwise appear on all such casualty policies.

9.     No utility providing water, natural gas, and/or electricity or similar service to any place where defendants have business operations shall cease providing such services to defendants without providing the Receiver with at least five business days notice and an opportunity to cure any outstanding amounts.

10.     Neither plaintiff nor the Receiver shall be liable for any claim, obligation, liability, action, cause of action, cost or expense of defendant or the Pledged Assets arising out of or relating to events or circumstances occurring prior to this Order, including without limitation, any contingent or unliquidated obligations and any liability from the performance of services rendered by third parties on behalf of defendant, and any liability to which defendant is currently or may ultimately be exposed under any applicable laws pertaining to the ownership, use or operation of the Pledged Assets and operation of defendants' business (collectively all of the foregoing is referred to as "Pre-Receivership Liabilities"). Neither the plaintiff nor the Receiver shall be obligated to advance any funds to pay any Pre-Receivership Liabilities.

11.     The Receiver shall file with this Court and serve on the parties who have filed appearances a monthly accounting of all receipts and disbursements concerning the performance of its duties under this Order, and a final accounting within 30 days after termination of the receivership.

12.     With the prior written consent of plaintiff, the Receiver shall have the power to enter into, modify, extend, terminate, and/or enforce leases in connection with the Pledged Assets in the ordinary course of business; provided, however, in so doing the Receiver shall not concede, settle, compromise or pay any Pre-Receivership Liabilities without the prior written permission of plaintiff.

Detroit_1024719_2

13.     In addition to the other powers and authority granted in this Order, the Receiver, after obtaining plaintiff's prior written consent, shall have the full authority and power to sell the Pledged Assets.

14.     The Receiver and its employees, agents, and attorneys shall have no personal liability, and they shall have no claim asserted against them relating to the Receiver's duties under this Order, except for claims due to their gross negligence, gross or willful misconduct, malicious acts and/or the failure to comply with this Court's orders.

15.     The Receiver is authorized, in its discretion, to operate the Pledged Assets under any and all existing agreements that are currently in place between the defendant and any third-party.

16.     This Court shall retain jurisdiction over this action, the Pledged Assets and the parties for the purpose of giving such other relief upon proper showing as is consistent with this Order and substantial justice.  Unless otherwise ordered by this Court, the receivership shall terminate with respect to any of the Pledged Assets upon the earliest of the sale of such Pledged Assets by the Receiver with plaintiff's consent as provided in Section 13 or further order of the Court.

17.     Until further Order of this Court, defendants, their agents, shareholders and employees, and all other persons with notice of this Order (other than Receiver), are restrained and enjoined from directly or indirectly transferring, encumbering, removing, expending, distributing, concealing, destroying, mutilating, damaging, erasing, altering, disposing of or otherwise diminishing or causing harm to any of the Pledged Assets, or any part of the Pledged Assets, all fixtures, machinery, equipment, engines, boilers, incinerators, building materials, appliances, and goods of every nature, and all articles of personal property located in, or on, or

used, or intended to be used in connection with the Pledged Assets, all proceeds from the operations of the Pledged Assets, including all Revenue, and all documents relating in any way to the defendants' business practices or finances or the Pledged Assets. No security is required prior to issuance of this injunction.

s/George Caram Steeh
Hon. George Caram Steeh
United States District Judge

Dated: August 6, 2010

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record August 6, 2010, by electronic mail.

s/Marcia Beauchemin
Deputy Clerk

Detroit_1024719_2